HAROLD TULL, PLAINTIFF-APPELLANT, v. STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 11, 1973—Decided October 18, 1973.

Before Judges CARTON, SEIDMAN and GOLDMANN.

*Mr. David L. Greene* argued the cause for appellant.

*Mr. John S. Fitzpatrick,* Deputy Attorney General, argued the cause for the State of New Jersey, Attorney General Kugler, State Police Superintendent Kelly, and State Police Major Graff, Captains Dorrian and Kell and Lieutenant Brennan.

The City of Asbury Park and its Police Chief Smith and City Manager Siciliano filed no brief.

"John Doe" filed no brief.

The opinion of the court was delivered by

GOLDMANN, J. A. D., Temporarily Assigned. This appeal stems from a Law Division action instituted by plaintiff Tull to recover for personal injuries suffered on July 7, 1970 during a civil disturbance in the City of Asbury Park. Named as defendants were the State of New Jersey; Attorney General Kugler; State Police Superintendent Kelly; "John Doe," an unidentified member of the New Jersey State Police; the City of Asbury Park; Asbury Park Police Chief Smith, and Asbury Park City Manager Siciliano.

Defendants State of New Jersey, Attorney General Kugler and State Police Superintendent Kelly moved to dismiss the complaint. The motion was granted.

Plaintiff's subsequent motion to add as defendants Major Graff, Lieutenant Brennan, Captain Dorrian and Captain Kell, all officers of the New Jersey State Police, was granted. A motion to dismiss the amended complaint or, in the alternative, to grant summary judgment in favor of these officers was filed. The trial judge found that each of them was entitled to summary judgment and ordered the amended complaint dismissed.

At trial, at the conclusion of plaintiff's case, the judge granted a motion to dismiss as to the remaining defendants, the City of Asbury Park, Police Chief Smith, City Manager Siciliano and "John Doe."

Plaintiff appeals from the judgment in favor of the municipal defendants, from the order dismissing the amended complaint as to the State Police officers, and from the order dismissing the complaint against the State, the Attorney General and Superintendent Kelly.

Plaintiff alleged that on July 7, 1970 he was shot, without cause, by an unidentified member of a contingent of the New Jersey State Police that had been summoned to Asbury Park, the site of the incident, to assist in maintaining order during a civil disturbance. He sued the State, the Attorney General, the State Police Superintendent, Asbury Park, Asbury Park

Police Chief and City Manager, and "John Doe" (the unidentified State Police trooper). He claimed that "Doe's" negligent or intentional or illegal acts caused the injury, imputing such negligence to all identifiable defendants on the doctrine of *respondeat superior.*

The court granted the dismissal motion of defendants State of New Jersey, the Attorney General, and the State Police Superintendent on the ground that all were immune from suit. Plaintiff had not, at the hearing on the motion, presented any material facts that would relate these defendants to the incident in any way other than their official status.

Upon joining Major Graff, Lieutenant Brennan and Captains Dorrian and Kell as defendants, plaintiff amended his complaint to charge them directly or vicariously with the shooting. In addition, a count of negligent or intentional supervision was included.

The affidavits of these men revealed that Dorrian was commander of the troop dispatched to Asbury Park, Kell was the officer responsible for investigating complaints of civilian shootings, Graff was Dorrian's superior, and Brennan was a criminal investigations officer assigned to another Troop. Their affidavits clearly placed each of them outside of Asbury Park at the time of the Tull incident.

Motion for summary judgment as to these four defendants was granted, the judge finding that plaintiff was unable either to connect them directly with the incident or to establish other than their supervisory position.

As noted, a motion was granted at the conclusion of plaintiff's case to dismiss as to the remaining (municipal) defendants. *Prima facie,* the evidence had neither established an agency relationship between the State Police and Asbury Park nor the negligence of any individual municipal defendant.

■■ On this appeal plaintiff suggests that the State is liable under the doctrine of *respondeat superior.* The claim is without merit. The State's immunity in such matters,

even prior to the passage of *N. J. S. A.* 52:4A–1, is clear. See, *e. g., Fitzgerald v. Palmer,* 47 *N. J.* 106 (1966). Plaintiff's counsel so conceded at the argument on the motion. He also conceded that he had nothing with respect to the Attorney General and the State Police Superintendent that would create a question of· fact. Although he now argues that he should have been given an opportunity to establish negligence against these two defendants under the doctrine of *respondeat superior,* he offers no supporting theory except that the Attorney General, as head of the Department of Law and Public Safety, and the Superintendent, as head of the State Police, had the overall responsibility for the operation of the State Police. That is not enough to establish liability. See *Harris v. State,* 61 *N. J.* 585, 593–594 (1972) ; *Willis v. Department of Conservation and Economic Development,* 55 *N. J.* 534, 540–541 (1970).

██ The superior officers named in the amended complaint were also properly removed from the case since none was in Asbury Park when the shooting occurred. The record stands uncontroverted as to this.

Plaintiff also argues that the State Police became agents of defendant Asbury Park when summoned by the city to help maintain the peace during the civil disorder. From this he concludes that liability for the alleged negligence or intentional shooting by "John Doe" is attributable to the municipality by application of the doctrine of *respondeat superior.* It is asserted that there was sufficient evidence of such an agency relation for this aspect of the case to have been submitted to the jury.

We have not had the benefit of an answering brief by the municipal defendants. The explanation given is that the person assigned by the city attorney to prepare a brief failed to do so through oversight. We cannot accept or excuse the failure to file a brief; there was a peremptory order directing the municipal defendants to file a brief by May 18, 1973, and no extension was requested or granted. The Attorney Gen-

eral was, of course, concerned only with filing a brief on behalf of the State, Attorney General and the State Police officers; he was not obliged to argue the cause for the municipal defendants. Accordingly, we must resolve plaintiff's contentions by our independent study of the record.

In our view, the trial judge properly concluded that no facts were adduced that would reasonably establish that the municipality, through its police chief or city manager, controlled the State Police. In this connection, it is appropriate that we consider the authority of the State Police in the situation. *N. J. S. A.* 53:2–1 provides:

> The members of the State Police shall be subject to the call of the Governor. They shall be peace officers of the State, * * * and shall have in general the same powers and authority as are conferred by law upon police officers and constables.
>
> They shall have power to prevent crime, to pursue and apprehend offenders and to obtain legal evidence necessary to insure the conviction of such offenders in the courts. They shall have power * * * to make arrests without warrant for violations of the law committed in their presence, and for felonies committed the same as are or may be authorized by law for other peace officers.
>
> They may co-operate with any * * * local authority in detecting crime, apprehending criminals and preserving law and order; but the State Police shall not be used as a posse in any municipality except upon order of the Governor when requested by the governing body of such municipality; * * *.

Thus, the power of the State Police to assist Asbury Park in its time of trouble did not stem from merely the municipality's call for assistance. It was only after a State Police observer surveyed the need, and a response thereto was authorized, that a State Police contingent could be dispatched.

The record amply demonstrates that when the contingent arrived on the scene, the municipal officials did nothing more than to confer with and brief the State Police as to the situation. The municipality exercised no control over their movements; they were not subject to orders from the Asbury Park police or any responsible municipal officer. There was only an incidental coordination between the local police and

the State Police. In fact, the State Police were operating independently, using their own personnel and helicopter, and employing their own tactics.

The State Police represented the interests of the State in maintaining law and order. As the trial judge noted, civil disturbances affect not only the particular locality involved, but can spread and affect a larger population. The interests of the State would be ill-served and the cooperation statute, N. J. S. A. 53:2-1, possibly thwarted if the State Police, viewed as agents of the summoning municipality, were subject to its every order only because — the necessary authority to respond having been given — they answered the call.

Finally, there was no evidence presented that showed that any of the municipal defendants were involved with the shooting incident of which plaintiff complains.

The judgment is affirmed.